## Case No. 12,904.

### SINGER SEWING–MACH. CO. v. UNION BUTTON–HOLE & EMBROIDERY CO. et al.

[Holmes, 253; 1 4 O. G. 553; 6 Fish. Pat. Cas. 480.]

Circuit Court, D. Massachusetts. Sept., 1873.

INJUNCTION — TO RESTRAIN DISSOLUTION OF CORPORATION—CONTRACT.

1. An injunction may be granted to restrain acts in violation of a lawful contract, although the nature of the contract is such that specific performance cannot be enforced.

[Cited, contra, in Bickford v. Davis, 11 Fed. 550. Cited in Goddard v. Wilde, 17 Fed. 846; Chicago & A. Ry. Co. v. New York, L. E. & W. R. Co., 24 Fed. 522; Gally v. Colt's Patent Fire Arms Manuf'g Co., 30 Fed. 122; Brush-Swan Electric L. Co. of New England v. Brush Electric Co., 41 Fed. 169.]

[Cited in Steinan v. Gas Co., 48 Ohio St. 333, 27 N. E. 545.]

2. A court of equity may restrain by injunction, acts in violation of an existing lawful contract, although it is terminable at the option of one of the parties only; unless the contract is of such a nature that the reservation of the right so to terminate makes the whole contract inequitable.

3. A corporation, the owner of certain patents, granted an exclusive license to the complainant to sell machines containing the patented inventions, and agreed to furnish the machines at a certain price. After furnishing many machines, the corporation, without fault of complainant, refused to deliver more; assigned the patent to one having knowledge of the contract, in trust for another association; and took measures for its own dissolution. On bill in equity by the licensee, a preliminary injunction was granted restraining the corporation from dissolving its organization, and the assignee in trust of the patents from transferring them.

[Cited in Goddard v. Wilde, 17 Fed. 846.]

[Cited in Wm. Rogers Manuf'g Co. v. Rogers, 58 Conn. 364, 20 Atl. 468.]

The bill alleged that the defendant company was, in 1866, the owner of certain patented inventions embodied in a machine for making button-holes, and owned a factory,

---

&c., for making the machines; and that, being desirous to bring the same into notice and to secure a market, they made a contract with the complainant, then a corporation of established reputation and large business in this country and in foreign countries, by which the complainant was to be the sole and exclusive agent for the sale of these machines, excepting in France and the city of Boston, and was to supply the market and to use certain means and facilities at its command for this purpose; and the defendant company was to furnish the complainant with machines, as called for, up to the full capacity of the factory, at a certain agreed price to be paid monthly in cash. It further charged that the complainant had bought and paid for one thousand machines, and had succeeded, with much labor and expense, exceeding the profit obtained, in selling these machines; and that a market had been made mainly, if not wholly, by its exertions; that the defendant company now neglected and refused to deliver any more machines, though requested; and were taking measures to dissolve their association for the purpose of avoiding their contract with the complainant, and in pursuance of that intent had conveyed the patents to the defendant Wood, as trustee for a voluntary and unincorporated body of persons unknown, called the Button-Hole Sewing-Machine Company; that said Wood had been the treasurer of the defendant company, and was fully informed of the complainant's rights. The prayer of the bill was for a decree for specific performance; and an injunction against the transfer of the patents by Wood, and against the dissolution of the defendant company, and the manufacture and sale of the machines excepting in conformity with the contract.

The agreement between the complainant and defendant companies contained this clause: "That the agency aforesaid shall continue so long as the patent or patents for said machine have been or may be granted or extended, provided that the Singer Manufacturing Company shall fairly and reasonably conduct such agency, and shall continue to supply the market with machines as aforesaid, and shall not engage in selling any other button-hole machines than those manufactured by the Union Button-Hole and Embroidery Machine Company; but in case the Singer Manufacturing Company shall fail to carry out their agreements as herein expressed, the forfeiture of such agency shall be considered the only penalty for such failure."

E. Merwin, for complainant.

H. G. Parker and E. S. Mansfield, for defendants.

The contract is not one that the court can enforce from the nature of the business. Garrett v. Banstead & E. D. Ry. Co., 11 Jur. (N. S.) 591; Munro v. Wivenhoe & B. R. Co., 13 Wkly. Rep. 880. It will not be enforced, because it is without mutuality. Geiger v. Green, 4 Gill, 472; Duvall v. Myers, 2 Md. Ch. 401; Bronson v. Cahill [Case No. 1,926]; Benedict v. Lynch, 1 Johns. Ch. 373; Rogers v. Saunders, 16 Me. 92; Woodward v. Harris, 2 Barb. 439; Phillips v. Berger, 8 Barb. 527; Marble Co. v. Ripley, 10 Wall. [77 U. S.] 339.

LOWELL, District Judge. There is no dispute that the two companies, complainant and defendant, made the contract, A, annexed to the bill, by which the former is to have the exclusive right of selling the patented machines, excepting in two excepted localities; that the defendant Wood had full knowledge of the contract, and that the defendants are about to carry out a course of action which will have a strong tendency, to say the least, to defeat the contract. In such a state of things a court of equity readily grants an injunction until the merits of the case can be inquired into, because, if it refuses to interfere at first, rights may be acquired and innocent third persons may become interested in the property in a way that will embarrass the final action of the court, and perhaps work injustice to those innocent persons. It is the direct opposite of a case in which the court is asked to interfere with existing rights upon the strength of some supposed paramount title, and to break up an established order of things. Here the defendants are breaking the established order, and are the actors in fact, and the court is asked to keep things as they are and were agreed to be, until the full evidence is taken. "It is certain," said a learned lord chancellor, speaking of a case of this kind, "that the court will in many cases interfere and preserve property in statu quo during the pendency of a suit in which the rights to it are to be decided, and that without expressing, and often without having the means to form, any opinion as to such rights." He then cites several authorities, and continues: "It is true that the court will not so interfere if it thinks there is no real question between the parties; but, seeing there is a substantial question to be decided, it will preserve the property until the question can be disposed of. In order to support an injunction for such a purpose, it is not necessary for the court to decide upon the merits in favor of the plaintiff." Great Western Ry. Co. v. Birmingham & O. J. Ry. Co., 2 Phil. Ch. 602. The decision of this motion, then, depends upon whether the complainant has made such a reasonable prima facie case for the relief, or some substantial part of the relief, which it seeks, that it is fairly entitled to maintain the status quo. Upon the matters of fact I find that they have such a case.

The two points of law are not without difficulty. The relief asked is specific performance and injunction. It is argued with great ability by the defendants, that the complainant is not entitled to specific performance, and that, therefore, it cannot have an injunction which is merely auxiliary. Granting the premises, I am not prepared to concede the

conclusion. If the court cannot order a contract for the making of button-hole machines to be specifically performed by reason of the impossibility of superintending the details of such a business, it does not follow that the bill may not be retained as an injunction bill. It was formerly thought that an injunction would not be granted to restrain the breach of any contract, unless the contract were of such a character that the court could fully enforce the performance of it on both sides. Upon this ground there were many decisions refusing to interfere with contracts for personal services, however flagrant might be the breach of them. Kemble v. Kean, 6 Sim. 333; Kimberley v. Jennings, Id. 340; Baldwin v. Society for Diffusion of Knowledge, 9 Sim. 393, in which the courts refused to restrain actors and authors from violating their engagements, because they could not oblige them specifically to keep them. But all these cases were overruled by one of the ablest chancellors who has adorned the woolsack, in Lumley v. Wagner, 1 De Gex, M. & G. 616. In that case a singer had agreed to sing at the plaintiff's theatre for three months, and not to sing at any other, and the court enjoined her from performing at a rival establishment, though it was clear and was admitted that the court could not oblige her to sing for the plaintiff. This case was fully in accord with Morris v. Colman, 18 Ves. 437, which had been disregarded or explained away in many of the intervening cases. It is now firmly established that the court will often interfere by injunction when it cannot decree performance. Thus it is said that the writ may issue to restrain the use of a ship contrary to an agreement for charter, though the agreement was not personally binding on the defendant, who was a mortgagee. De Mattos v. Gibson, 4 De Gex & J. 276; that a tenant may be restrained from doing any thing which will prevent the demised premises being used as an inn, though he cannot be forced to keep the inn as he had covenanted to do. Hooper v. Brodrick, 11 Sim. 47; that where two railway companies had made an agreement for the use by each of the road of the other, the court might enjoin the obstruction of such use by one of the parties, though it could not enforce full performance of the whole agreement. Great Northern Ry. Co. v. Manchester, S. & L. Ry. Co., 5 De Gex & S. 138. The case of Lumley v. Wagner, 1 De Gex, M. & G. 604, has been followed in numerous cases concerning actors, authors, and publishers. Webster v. Dillon, 5 Wkly. Rep. 867; Stiff v. Cassell, 2 Jur. (N. S.) 348. The case of Fechter v. Montgomery, 33 Beav. 22, sometimes cited as opposed to these decisions, is not so at all; the decision there was, that the actor had the right to renounce his engagement because the manager had not fulfilled his part of the contract. See, also, Slee v. Bradford, 4 Giff. 262; Rolfe v. Rolfe, 15 Sim. 88. Dietrichsen v. Cabburn, 2 Phil.

Ch. 52, has much resemblance to the case at bar. The defendant owned a patent medicine, and appointed the plaintiff his wholesale agent for the sale of it, and agreed to supply him with all the medicine he should order at forty per cent discount from the current retail price, and covenanted not to sell to any one else at a greater discount than twenty-five per cent above that current price. On demurrer, the lord chancellor, overruling the vice-chancellor, sustained the bill which sought to enjoin the defendant from selling to any one else at less than the agreed discount, and for an account. It is plain, I think, that the decision would have been the same if the defendant had agreed not to sell to any one else on any terms. This case virtually overruled Hills v. Croll, Id. 60, decided a year earlier. See the able note of the reporter at the end of the last-mentioned case. These are but a few of the decisions, though they are among the most important of them.

This is certainly a subject upon which it is almost impossible to reconcile the decisions, and of such inherent difficulty, that I know of no other in which the appellate courts have so often reversed the decisions below. I have examined a great many of the cases, and some apparent contradictions may be understood by recollecting that the granting or refusing an injunction is scarcely ever a matter of strict right, and that any attempt to lay down precise and invariable rules on the subject must necessarily fail. There are many cases in which injunctions have been refused in behalf of the employed, when, upon the precedent of Lumley v. Wagner, and that class of cases, they would have been granted to the employers. This seems unequal. The explanation, such as it is, appears to be, partly, that courts of equity are unwilling to force upon any one an agent or servant who is personally disagreeable, if the relation between the parties is at all a personal or confidential one; and partly, that, on the part of the agent or servant, the remedy at law is usually adequate, both from the nature of the contract and the standing of the parties. See Mair v. Himalaya Tea Co., L. R. 1 Eq. 411; Johnson v. Shrewsbury & B. Ry. Co., 3 De Gex, M. & G. 914. There are other cases which I can reconcile with those I have above cited, only on this ground, that where the subject-matter or business is of public importance; such as the management of a railway, the courts will not risk a total stoppage of the business by injunction when they cannot go forward and regulate the whole matter by a decree for specific performance. Peto v. Brighton, U. & T. W. Ry. Co., 11 Wkly. Rep. 874; Johnson v. Shrewsbury & B. Ry. Co., 3 De Gex, M. & G. 914.

I think the fair result of the later cases may be thus expressed: If the case is one in which the negative remedy of injunction will do substantial justice between the parties, by obliging the defendant either to car-

ry out his contract or lose all benefit of the breach, and the remedy at law is inadequate, and there is no reason of policy against it, the court will interfere to restrain conduct which is contrary to the contract, although it may be unable to enforce a specific performance of it. It seems to me that this case comes easily within this rule. The court cannot, perhaps, superintend the performance of a contract to manufacture machines, but it can restrain the defendants from selling in violation of their agreement.

The case may also be looked at in another view, which was presented in the complainant's argument. This is not only an agreement between the parties, that certain things shall be done by them, but it is also the grant of an exclusive license (excepting for France and Boston) to the complainant to sell the patented machines. And it has never yet been doubted that the court could restrain all persons, whether they were acting with or without notice, and whether bound by contract or not, from trespassing on such a title.

But it is said to be fatal to the complainant's case that the contract is not a mutual one. This want of mutuality is found in the article which limits the penalty for a forfeiture on the complainant's part to a mere loss of the agency. This is said to be equivalent to an agreement that the complainant may renounce at any time; and so it is argued that only one party is bound to this agreement. It is no doubt true, in general, that where only one side is bound to an agreement which remains wholly executory, a court of equity will not usually interfere to enforce the agreement against the party who is bound. The simplest case of this kind is where an infant is one party to a contract for the sale of land. The reason given is, that the party who is not bound would enforce the contract if for his advantage, and repudiate it if the contrary. Lawrenson v. Butler, 1 Schoales & L. 13. The doctrine is often invoked in that class of cases. But there are innumerable cases where the party seeking performance is no longer bound to any thing, having paid the consideration in the outset, or performed his part, or where the plaintiff does not rest on a contract wholly executory, to which this doctrine does not apply. I have some doubt of its application to this case. Supposing the stipulation to mean, what the defendants contend it does, that the complainant may renounce at any time, which may be doubted, still, if the defendants, for valuable considerations, have given the complainant an exclusive license until it forfeits it, I do not see why a court of equity should not protect that license by its injunction, as usual, so long as it is not forfeited. A very strong case was cited from [Marble Co. v. Ripley] 10 Wall. [77 U. S. 339], in which the supreme court refused to decree the specific performance of a contract for quarrying marble, &c., on the ground, among several others, that the plaintiff had

the right to give up the arrangement on a year's notice. I cannot think that the court intended to announce any general proposition that they would never enforce a contract which one party had a right to put an end to in a year. Every thing must depend upon the nature and circumstances of the business. In many of the cases that I have cited, the plaintiff had it in his power to end the contract. It is certainly competent to the parties to make a contract which will be equitable and reasonable, and in which their rights ought to be protected while they last, though it may be terminable by various circumstances, and though one party may have the sole right to terminate it, provided their stipulation is not one that makes the whole contract inequitable. In the note which I have above referred to in the case of Hills v. Croll, the learned reporter thinks it quite clear that a contract by the defendant to buy all his acid of the plaintiff, so long as the plaintiff chose to deal with him, would be valid, and would be enforced by injunction. In Rolfe v. Rolfe, 15 Sim. 88, the vice-chancellor notices the fact, that the plaintiff could stop his own business when he chose, and thereby deprive the defendant of the employment agreed on, yet he restrained the defendant in the mean time from working for a stranger.

The remedy by injunction is a very elastic and adaptable one, and there is no sort of difficulty in granting it, until, by a change of circumstances, it shall appear that it ought to be dissolved. A bill may be retained for that purpose for any number of years that may be requisite. The argument, to be sound, must go this length, that, after the complainant has ordered a thousand machines, and paid for them, and is selling them in all the countries of the world excepting France, there is no adequate remedy against the defendants' underselling in all those markets. I do not mean to be understood that this point would not apply to an injunction bill as well as to one for specific performance, nor that it is not a doubtful one. But the contract contains in itself, as we have seen, not only executory agreements on both sides, but a present grant, for value, of the exclusive right to sell; and my present impression is, that such a grant is good, and is to be enforced, so long as it lasts, whether the remainder of the contract is mutual or not, provided the whole contract, including the grant, is not so unequal as to be void in a court of equity, which, as at present advised of the facts, I see no reason to hold.

It seems to me, therefore, that the complainant's case has a sufficient appearance of justice to require the court to keep things as they are, by restraining all conduct which will put it out of the power of the defendants to fulfil their contract, until the facts and law can be fully ascertained.

Injunction ordered.