NOKOL COMPANY OF MISSOURI, Appellant, v. ARTHUR W. J. BECKER ET AL.—300 S. W. 1108.

Court en Banc, December 2, 1927.

293

*Foristel, Mudd, Hezel & Habenicht* for appellant.

*Fordyce, Holliday & White* and *Lord, Wire & Cobb* for respondents.

SEDDON, C.—Suit in equity brought by plaintiff, Nokol Company of Missouri, a corporation, against four individual defendants and two corporate defendants, the St. Louis Nokol Company and the American Nokol Company. The nature and purpose of the suit and the precise equitable relief asked are best shown in the exact language of the amended bill, or petition, which is as follows:

"Plaintiff, . . . for cause of action says:

"Paragraph 1. That the plaintiff and the defendants St. Louis Nokol Company and American Nokol Company are each and all corporations duly organized and existing under the law, the two former under the law of the State of Missouri, and the latter, the American Nokol Company, under the law of the State of Illinois. That the defendant American Nokol Company, in August, 1922, was, and ever since has been, the owner of a certain patented device designed and intended for use in heating residences by the use of oil, and called and known as the 'Nokol Automatic Oil Burner,' and as such owner manufactures the said burner for general use. That being so the owner, the last said defendant, on, to-wit, August 1, 1922, entered into and duly executed a contract with the plaintiff, which said contract contains many and divers provisions and covenants to be kept and performed by the parties thereto, respectively, and was on said date duly signed and executed by both said parties,

to-wit, the said defendant American Nokol Company and the plaintiff, by and through their respective proper corporate officers. That among the provisions of the said contract the said defendant owner constituted and authorized the plaintiff as sole and exclusive dealer in the said burner in certain territory, to-wit, the city and county of St. Louis and the State of Missouri, and the counties of St. Clair and Madison, in the State of Illinois, and gave to and invested the plaintiff with the sole and exclusive right to purchase, sell and install and deal in the purchase and sale and installation of said burner within the said territory for and during the period beginning with the date of said contract and ending July 1, 1927. And further the said owner, defendant American Nokol Company, in and by the terms and provisions of the said contract, agreed and obligated itself, as owner and manufacturer of said burner, to furnish the plaintiff from time to time, on plaintiff's order, such of the said burners, in number and quality, together with all necessary accessories, as the plaintiff as such dealer would need for use in its said territory in the course of the business to be built up and established by the plaintiff in said territory. Among the provisions of the said contract it was further provided that the plaintiff as such dealer shall establish and maintain offices and sales-and-show rooms in its territory, equipped with demonstrators capable of performance as in actual heating usage, and that plaintiff should use its best efforts to sell and promote the sale of said oil burner in said territory, and should maintain a stock of burners and parts thereof sufficient to meet all the demands of the trade in said territory.

"It was further provided in said contract that the plaintiff should advertise said burner in said territory in a local newspaper, and also by direct-by-mail campaign at a large cost and expense, and to engage suitable space in newspaper in his territory under the direction and approval of the owner of said burner.

"It was further provided in said contract that the plaintiff, as dealer thereunder, should invest and maintain a large working capital, sufficient, in the judgment and opinion of said owner, to insure the proper conduct of the business growing out of and contemplated by said contract, and to be built and established by the plaintiff.

"It was further provided that plaintiff, as such dealer, should operate the entire said territory either through a main office or branch offices, to be opened, maintained and established by the plaintiff in a manner satisfactory to the said defendant, American Nokol Company, as owner.

"It was further agreed in said contract that the said defendant, American Nokol Company, owner, would 'use due diligence to protect the territory' covered by the said contract.

"Plaintiff further alleges that the plaintiff and defendant having so entered into the said contract, the plaintiff, pursuant to the pro-

visions of the said contract, and relying upon its protection, and particularly the exclusive rights, as aforesaid, did, at a great outlay of money and labor, open an establishment and office and place of business in the said territory, to-wit, in the city of St. Louis, for the conduct of the business of selling and installing the said burner, and did set up the proper equipment, show and demonstration rooms, and did employ a large number of employees as agents, servants and salesmen of the plaintiff, at large salaries, and did outlay large sums of money for advertising of the said business, and actively enter upon the said business, and did establish a large and valuable business in the sale and installation of the said burner under the said contract, wholly relying upon its protection and said exclusive rights, and did obligate itself to its customers and purchasers under contract with them to install the said burner in the respective residences of its said customers.

"Plaintiff further says that upon the making and entering into the said contract the said defendant, American Nokol Company, party thereto, did undertake to cause the said contract to be properly written, and did present to the plaintiff a written draft of the said contract, which was, as aforesaid, signed and executed by the parties thereto, but that by mutual oversight, inadvertance and mistake of both the parties to the said contract 'the city of St. Louis' was omitted from the draft of the said contract and written document, contained the same as executed.

"Wherefore, the plaintiff prays that the said contract and the written document purporting to contain the same, as aforesaid executed, be so reformed by proper decree of this court as to include within its provisions 'the city of St. Louis' as a part of the said territory, according to the real agreement of the parties.

"Paragraph 2. Plaintiff further says that, notwithstanding the premises as set forth in paragraph one hereof, on or about June —, 1923, the defendant, American Nokol Company, meaning and intending wrongfully to disregard, violate and breach the provisions of its said contract with the plaintiff, did wrongfully and in disregard and violation of plaintiff's said contract, make and enter into another contract with the defendant Becker, containing all and like provisions as its contract with plaintiff, as set out in paragraph one hereof, excepting as to parties and dates, and purporting to grant to the said Becker the like exclusive rights as dealer in the said automatic burner within the same territory, and all as set out in its said contract with the plaintiff.

"That the defendant Becker, meaning and intending to act in disregard and violation of plaintiff's said contract, did accept said contract between him and the defendant American Nokol Company, and having accepted the same did open an office and place of business

in the city of St. Louis for the establishment and conduct of the business of buying, selling and installing the said burner in the same said territory as covered by both said contracts, and did employ or associate with himself to that end, and for the purpose of said business, the other defendants, Marsden, Harris and Buddeke, and the said other defendants, Marsden, Harris and Buddeke, did accept employment with the said Becker for the said purpose of wrongfully conducting said business, all in violation of plaintiff's said contract, and they and said Becker did, at the said city of St. Louis, actively enter upon the business of selling and installing the said automatic burner, and did make sales of the same to customers in said territory, and are now proceeding to make sales of the said burner in the said territory, and unless enjoined by decree of this court propose, threaten and intend to proceed with and continue such business and to make sales of the said burner whenever and to whomsoever they may be able so to do, and are actively engaged to that end, all to the detriment, injury, hurt and damage of the plaintiff, and in violation of plaintiff's said contract and its exclusive rights and business established, as aforesaid thereunder, and have made many sales, and have interfered with and are interfering with the plaintiff's customer's by announcing to them and to the public generally a pretended right on their part to make sales of said burner.

"Paragraph 3. Plaintiff further says that since the execution of the said wrongful and pretended contract between the defendant American Nokol Company and the defendant Becker, meaning and intending to disregard and violate, and for the purpose of so disregarding and violating plaintiff's said contract and its exclusive rights under its contract with the defendant American Nokol Company, the defendant Becker and the defendants, Marsden, Harris and Buddeke, have caused to be incorporated in due form of law the defendant St. Louis Nokol Company, with themselves the principal and controlling stockholders and managing officers, and having so caused to be incorporated the defendant St. Louis Nokol Company, have, with the written consent and approval of the defendant American Nokol Company, assigned and transferred all of the pretended and purported rights, provisions and obligations of the parties to, under and arising out of the said last contract, to the defendant St. Louis Nokol Company, and the said defendant St. Louis Nokol Company has, by its officers and agents, duly accepted such transfer, and together with the other defendants and acting under the purported privileges and provisions of its said contract, has proceeded and is proceeding to set up and maintain an office in the city of St. Louis for the conduct of the business, and is proceeding to conduct the business of selling and installing said burner in the said territory, all in disregard and violation of and for the purpose of disregarding

300

and violating the rights of plaintiff under plaintiff's said contract as set out in paragraph 1 hereof, and unless restrained by the decree of this court, the said defendant St. Louis Nokol Company, together with all of the said defendants, propose, threaten and intend to sell and install and to conduct the business of selling and installing said burners in the said territory, and have made sales and are proceeding further to make sales thereof in the said territory, all to the injury, hurt and damage of the plaintiff, as herein set out.

"Paragraph 4. And the plaintiff is informed, believes and so further alleges that all of the defendants, by concert and mutual understanding between themselves, well knowing all the time of the plaintiff's said contract with the defendant American Nokol Company and its exclusive rights thereunder, as more particularly stated in paragraph 1 hereof, and meaning and intending to disregard and violate plaintiff's said contract and its exclusive rights thereunder, have, as aforesaid, procured and caused to be made and entered into said contract of June —, 1923, between the said defendant American Nokol Company and said Becker, and have caused the same to be transferred and assigned by said Becker to the defendant St. Louis Nokol Company, and acting under the pretended and purported rights, and the terms and provisions of said last-mentioned contract, and for the common purpose of disregarding and violating plaintiff's said contract and of injuring the plaintiff in the conduct of plaintiff's lawful business under plaintiff's said contract, have each and all of them severally and in concert, and for the said common purpose, done the acts and things more particularly set out and described in paragraphs 2 and 3 hereof, all to the hurt, injury and damage of the plaintiff, as herein set out.

"Paragraph 5. Plaintiff further says that the defendants, and each and all of them, for the purpose of violating plaintiff's said contract with the defendant American Nokol Company and for the purpose of injuring and destroying the plaintiff's business thereunder, did cause, induce and procure the defendant American Nokol Company to refuse to keep and perform the undertakings, covenants and agreements entered into with the plaintiff in plaintiff's said contract and to wholly refuse performance thereof, and the defendant American Nokol Company, after making the said contract with the said Becker as aforesaid, did so wholly refuse to keep and perform any of its undertakings, covenants and agreements entered into with the plaintiff in plaintiff's said contract, and to refuse performance thereof, and so the said defendant American Nokol Company did, and has ever since and does now, refuse to keep and perform any of its said covenants in its said contract with the plaintiff, and to furnish plaintiff the said burner and necessary parts thereof, so that the plaintiff's business under its said contract has been wholly arrested, obstructed and destroyed.

"That the defendant American Nokol Company is the exclusive manufacturer of said burner, and that therefore and because of the said wrongful conduct of the defendants, as aforesaid, the plaintiff has been rendered unable to procure the said burner, and has been rendered unable to keep and perform its contracts with its customers for the sale and installation of said burner, and so that by reason of the premises the plaintiff has suffered said destruction of its business, and has been damaged in the sum of, to-wit, twenty thousand dollars, for all of which it prays judgment against the defendants.

"Paragraph 6. And the plaintiff further says that for that it has no adequate remedy at law for the divers and grievous wrongs and injuries done by the defendants as herein set out, it therefore invokes the equitable jurisdiction of this court and the aid of equity and its peculiar and proper remedial processes, and prays for a temporary injunction enjoining and restraining the defendants, and each and all of them, and their agents, attorneys, employees and associates, from in any manner proceeding, in violation of plaintiff's said contract, to sell, install or deliver or in any manner deal in the said burner, or in any manner to advertise any such business or to proclaim or claim the right to deal in the said burner during the period of plaintiff's said contract, as aforesaid, and that said injunction be made perpetual, and that the defendants, and each and all of them, be required to render an account of whatever business they have done in the purchase, sale and installation of said burner within the said territory, and for all other and proper and suitable relief, and for general relief."

The four individual defendants and the corporate defendant St. Louis Nokol Company filed demurrers to said petition, which demurrers were overruled, whereupon said defendants filed answers, to which plaintiff filed reply. Defendant American Nokol Company is alleged to be a foreign corporation. It was not served with process and has not appeared in the cause or filed a pleading herein, although it appears upon the record that process issued against it and was returned *non est*.

The cause came on for hearing, and the attention of the trial court being called to the fact that defendant American Nokol Company had not been served with process, the court announced that plaintiff could elect whether to dismiss as to said defendant or to continue the cause for service. Thereupon, counsel for plaintiff announced: "I want the record to show that the defendant American Nokol Company, being a Chicago corporation and not being within reach of summons in this State, and that plaintiff having been unable to get service upon it, it is therefore dismissed as to that defendant. It is not a voluntary dismissal altogether, because I cannot help myself." Counsel for the appearing defendants then objected to the

introduction of any evidence in the cause, "on the ground that the petition shows on its face it is not a cause of action in equity and fails to state facts sufficient to entitle plaintiff to equitable relief; it has an action at law, if any."

The trial court thereupon announced: "After hearing arguments by counsel for plaintiff and defendants on the objection to the introduction of evidence on the ground that the petition does not state a cause of action in equity, I am of the opinion that the objection should be sustained, and it is sustained on the ground that the petition states a cause of action for breach of contract at law, and the main defendant is not before the court, namely, the American Nokol Company, the other party to the contract in question, and that this case cannot be properly adjudicated as a suit in equity on any prayer for injunctive relief without the presence of that defendant in this court. The objection is sustained on the sole ground that the petition does not state a case in equity. Now, plaintiff may either amend the bill by eliminating the prayer for equitable relief and leave it stand as a cause of action at law for damages or plaintiff may refuse to amend, in which event it will be necessary to dismiss the bill." Exceptions were duly taken and saved by plaintiff to the ruling of the court, and, upon the refusal of plaintiff to amend its bill, judgment was entered dismissing the bill and taxing the costs against plaintiff. In due time, plaintiff filed its motion to set aside the order and judgment of dismissal, and also filed its motion for new trial. Both motions being overruled and exceptions saved, plaintiff appeals to this court.

I. Appellant assigns error on the part of the trial court in sustaining the appearing defendants' objections to the introduction of any evidence under the petition, and in the entry of judgment dismissing the petition or bill. Respondents assert that the petition shows upon its face that appellant is not entitled to the equitable relief prayed, and that it appears from the allegations thereof that appellant has a complete and adequate remedy at law; it is also asserted by respondents that the American Nokol Company is a necessary and indispensable party to the action, and, hence, there being no service of process upon that corporation and it not having appeared herein, the trial court properly dismissed appellant's petition or bill. We will discuss the several questions thus presented in their order.

It is urged by respondents that the allegations and prayer of the bill make it evident that the real purpose and object of appellant's action is to force and obtain, by and through the means of an injunction, equitable relief which is tantamount to, and the equivalent of, specific performance of appellant's alleged contract with the

American Nokol Company; that the alleged contract requires the performance of personal services upon the part of appellant, and therefore the American Nokol Company, on the one side, cannot compel specific performance of the contract by appellant, and hence appellant, on the other or opposite side, cannot obtain specific performance of the contract by the American Nokol Company, because the obligations and remedies of the respective parties to the contract are not mutual. In other words, respondents contend that the rule is well established in this State that, in order that a contract may be specifically enforced in equity, it is essential that there be mutuality both as to the obligation and the remedy; that, unless the contract is capable of being specifically enforced in equity, its performance cannot be indirectly enforced by and through the aid of injunction. It is true that this court and our courts of appeals have announced the rule or principle that, to entitle one party to specific performance, the contract must be capable of being enforced by either of the parties against the other; that is, there must be mutuality both as to the obligation and the remedy of the respective parties. [Glass v. Rowe, 103 Mo. 513; Lackawanna Coal & Iron Company v. Long, 231 Mo. 605; McCall v. Atchley, 256 Mo. 39; and Falder v. Dreck-shage, 227 S. W. 929.]

While conceding the rule announced by this court to the effect that specific performance will be denied unless the contract is capable of being enforced by either party against the other or opposite party, nevertheless appellant insists that it does not necessarily follow that injunctive relief may not be granted by a court of equity to restrain one of the contracting parties from doing certain things which he has bound himself, by negative covenants, not to do. The rule contended for by appellant is thus stated in Page on Contracts (2 Ed.), vol. 6, Section 3378: ''In many jurisdictions, modern equity regards injunction as radically different in one respect, at least, from specific performance. In specific performance it is sought to compel the defendant to perform all the covenants of the contract on his part to be performed; and there is, accordingly, some justification for the theory that he should not be compelled to perform unless he can have specific performance against the plaintiff, although, even in specific performance, it is held in many jurisdictions, that sufficient protection can be given by a conditional decree and the like. In a suit for an injunction, the plaintiff does not necessarily seek to compel the defendant to perform all of the covenants which he is bound to perform; but he merely seeks. in many cases, to restrain the defendant from doing certain things which he has bound himself, by his negative covenants, not to do. In many jurisdictions, accordingly, equity is ready to grant injunction against the defendant who could not have had either specific performance or injunction against the plaintiff.''

While the alleged contract or agreement between plaintiff and the American Nokol Company is not in evidence herein and the contract is not pleaded *in haec verba,* or in its entirety, yet appellant does plead the substance thereof. Inasmuch as appellant stood upon the ruling of the trial court upon defendants' objection to the introduction of any evidence under the petition, the matter on appeal stands precisely as if a general demurrer to the petition had been sustained and final judgment had gone against appellant; therefore, all facts well pleaded in the petition must be taken and considered by us as true, and the appellant must be given the benefit of every reasonable intendment therefrom. Looking then to the petition herein, we find the following substantive facts pleaded: ''That the defendant American Nokol Company, in August, 1922, was, and ever since has been, the owner of a certain patented device designed and intended for use in heating residences by the use of oil, and called and known as the 'Nokol Automatic Oil Burner,' and as such owner manufactures the said burner for general use; that being so the owner, the said defendant, on August 1, 1922, entered into and duly executed a contract with the plaintiff, which said contract contains many and divers provisions and covenants to be kept and performed by the parties thereto; . . . that among the provisions of the said contract the said defendant owner constituted and authorized the plaintiff as *sole and exclusive dealer* in the said burner in certain territory, to-wit, the city and county of St. Louis and the State of Missouri, and the counties of St. Clair and Madison, in the State of Illinois, and gave to and invested the plaintiff with the *sole and exclusive right to purchase, sell and install,* and deal in the purchase and sale and installation of said burner *within the said territory* for and during the period beginning with the date of said contract and ending July 1, 1927; . . . it was further agreed in said contract that the said defendant, American Nokol Company, owner, would '*use due diligence to protect the territory*' covered by the said contract; . . . that, notwithstanding the premises as set forth . . . , the defendant, American Nokol Company, *meaning and intending wrongfully* to disregard, violate and breach the provisions of its said contract with the plaintiff, did *wrongfully* and in disregard and violation of plaintiff's said contract, make and enter into another contract with the defendant Becker, containing all and like provisions as its contract with plaintiff, . . . excepting as to parties and dates, and purporting to grant to the said Becker the like exclusive rights as dealer in the said automatic burner *within the same territory,* and all as set out in its said contract with plaintiff; . . . and the plaintiff is informed, believes and so further alleges that *all* of the defendants, *by concert and mutual understanding between themselves, well knowing all the time of the plaintiff's said*

*contract* with the defendant American Nokol Company *and its exclusive rights thereunder, . . . |and meaning and intending to disregard and violate plaintiff's said contract and its exclusive rights thereunder,* have procured and caused to be made and entered into said contract of June —, 1923, between the said defendant American Nokol Company and said Becker, and have caused the same to be transferred and assigned by said Becker to the defendant St. Louis Nokol Company, . . . and *for the common purpose of disregarding and violating plaintiff's said contract and of injuring the plaintiff* in the conduct of plaintiff's lawful business *under plaintiff's said contract,* have *each and all of them severally and in concert, and for the said common purpose,* done the acts and things more particularly set out and described . . . ; that the defendants, and each and all of them, *for the purpose of violating plaintiff's said contract* with the defendant American Nokol Company and for the purpose of injuring and destroying the plaintiff's business thereunder, did *cause, induce and procure* the defendant American Nokol Company to refuse to keep and perform the undertakings, covenants and agreements entered into with the plaintiff in plaintiff's said contract and to wholly refuse performance thereof.'' (Italics ours.)

Appellant insists that the American Nokol Company, in giving and granting to appellant the exclusive right and privilege to sell and install said automatic oil-burner within the allotted territory above-mentioned (i. e., the city and county of St. Louis and the said two counties in Illinois), thereby impliedly agreed and contracted with appellant not to grant such right and privilege to another, and, in addition thereto, expressly obligated itself, by the terms of the alleged contract, to ''use due diligence to protect the territory covered by the said contract;'' that, therefore, appellant, upon the facts pleaded, is clearly entitled to the injunctive relief prayed in its petition.

While counsel for respective parties herein have not cited, and we have been unable to find, any ruling of this court, or of our several courts of appeals, upon the precise question now before us, the well-reasoned utterances of the courts of other jurisdictions clearly and positively uphold the right of a complainant in equity to enforce the negative covenants of a contract by restraining or enjoining the opposite party to the contract, and also a third person or persons acting in concert with such party, from interfering with, or injuring, complainant in the exercise of his *exclusive* contractual rights, even though complainant be not entitled to a decree of specific performance against the opposite party to the contract.

In Meyers v. Steel Machine Co., 57 Atl. 1080, defendant agreed to sell to complainants all of certain printing presses with patent feeds which defendant should manufacture, and to sell the same to no oth-

er person, provided complainants should purchase all that the defendant should make. Complainants prayed specific performance of the contract and that defendant be enjoined from selling, or attempting to sell, the machines referred to in the contract to any other persons than complainants. Specific performance was denied, but the right to the injunctive relief prayed was upheld. In ruling the matter, the court said (l. c. 1085): ''The complainants insist that they are entitled to a decree which shall compel the defendant company specifically to perform its agreement according to its terms. There is a class of cases in which the agreement sought to be enforced is sufficiently established and the obligation of the defendant is conclusively shown, but in which courts of equity refuse to make a mandatory decree for specific performance. These decisions have been given on contracts which require the defendant to do some personal act because of his artistic capacity or skill in that matter, as an engagement to sing at a theatre, and not elsewhere (Lumley v. Wagner, 1 Deg. M. & G. 604), or to build a house (Errington v. Aynesley, 2 Bro. Chan. Cases, 343). In such cases equity will enforce a negative covenant, and restrain the defendant from giving another than the complainant (whom he contracted exclusively to serve) the benefit of his skill, but it will not make a mandatory decree to compel the defendant to exercise his art in the actual performance of the contract. . . . In the cause at bar the defendant company has agreed to manufacture and sell to the complainants (and to no one else so long as the complainants take all that the defendant shall produce) certain machines, which shall be 'in good working order when put up for running.' The evidence shows that a considerable degree of mechanical skill is required to produce the machine in question in such perfection of performance that when put up for running it shall be in good working order. This court cannot compel the continued exercise of personal skill in the production and sale to complainants of a succession of perfectly working machines. It will not, for this reason, make a decree requiring such acts to be done. It may and will, however, restrain the defendant company, which agreed to do those acts exclusively for the complainants, from doing them for or with any other person. For these reasons, the complainants should have an injunction to enforce the negative covenants of the contract.''

In Manhattan Manufacturing Company v. Stockyard & Market Company, 23 N. J. Eq. 166, defendant stockyard company owned a large slaughter-house, in which it let to butchers the privilege of slaughtering animals. The conduct of the business resulted in a nuisance, to remedy which defendant company entered into a contract with plaintiff, a fertilizer manufacturer, whereby plaintiff was given ''the refusal and exclusive right of saving and taking all the

blood of animals slaughtered in the abattoir and sheep house, and of saving and taking the animal matter and ammonia from the rendering tanks, and of using the same in their business.'' Thereafter, defendant company, in violation of its contract with plaintiff, leased its slaughter-house to other of the defendants, who formed a co-partnership with the purpose of manufacturing fertilizers, and so diverted the blood and other animal matter from plaintiff to the said co-partnership. It was ruled that all of the defendants had knowledge on notice of the contract with plaintiff, and its exclusive privileges, and that, since all of the defendants had notice of plaintiff's contract, a court of equity will enjoin them from interfering with the exclusive rights of plaintiff under said contract. Said the court: ''The injunction applied for is not a mandatory injunction; it is not to require the delivery of the blood, but to restrain Craven from taking it, and the other defendants from suffering or permitting any other person than the complainant to take it. For this injury there is a remedy at law, but it is not an adequate remedy. The value of the blood is no measure of the injury, and it is hardly possible to compute the damages which the injury may occasion. And redress at law could only be obtained by a continued series of suits through the twenty or forty years of the complainant's term. It is a case peculiarly proper for the preventive remedy by injunction. [Shreve v. Black, 3 Green's Ch. 177.]''

In Western Union Telegraph Company v. Rogers, 42 N. J. Eq. 311, 11 Atl. 13, defendant hotel proprietor had granted to complainant the exclusive privilege of establishing and operating a telegraph office in his hotel, and thereafter defendant entered into an agreement with another telegraph company, extending to it the right to transact telegraph business in the same hotel. Thereupon complainant prayed an injunction against defendants to restrain them from carrying into effect their agreement. In issuing an injunction, the court said: ''The principal defense by way of answers and argument is, that for this manifest and confessed breach of the agreement with the complainant, the complainant has an adequate remedy at law. In other words, it is insisted that the transaction exhibits nothing more than the ordinary violation of a contract, the damages for which are easily ascertainable, and are therefore a proper subject to be submitted to a jury. This insistment, then, amounts to this: that it is the duty of this court to allow parties to violate their agreements at will, and those who participate in such violation to enjoy the fruits thereof, and oblige the injured party to carry on a litigation at law for redress of his wrongs. I do not think this court is so helpless in such case. I think it proper for this court in such case to aid the party who has the first and unquestioned right, and to oblige the interfering party to carry the litigation at law for dam-

ages for breach of contract. Again, it is urged that the complainant cannot be heard in this court, because the court never exercises jurisdiction unless it appears that the damages threatened are irreparable. This, it is true, is one well-settled rule; but another is equally well settled, viz.: that the party will not be driven to his legal remedy where it may appear that that remedy will prove inadequate.''

In Beekman v. Marsters, 195 Mass. 205, 80 N. E. 817, a hotel corporation, operating the only hotel within the grounds of the Jamestown Exposition, had made a contract with plaintiff whereby he was made its exclusive agent for the New England states to solicit patronage for the hotel, plaintiff receiving a stated commission therefor. Defendant induced the hotel corporation to violate its contract with plaintiff by granting to defendant like privileges, and plaintiff sought the aid of equity to enjoin defendant from interfering with his exclusive rights under his contract with the hotel company. Said the Massachusetts Supreme Court: ''The result of the findings of the master must be taken to be that the defendant induced the hotel corporation to break its contract with the plaintiff, but that he did not do this to spite the plaintiff or for the purpose of injuring him, but for the purpose of getting for himself (the defendant) business which the plaintiff alone was entitled to under the contract with the hotel corporation, that is to say, to get business which the defendant could not get if the hotel corporation kept its agreement with the plaintiff. . . . So far as the first defense is concerned, it is in effect that where A. is under a contract to serve the plaintiff for a specified time, the defendant, knowing that contract to be in existence, is justified in hiring A. away from the plaintiff before the expiration of that time, by giving him (A.) higher wages if he (the defendant) thinks that to be for his (the defendant's) pecuniary benefit. The ground on which the defendant bases this contention is that he has a right to compete with the plaintiff and that the right of competition is a justification for thus hiring away the plaintiff's servant. We say that this is in effect the defense set up here because it has been settled in Massachusetts that there is no distinction between a defendant's enticing away the plaintiff's servant and a defendant's inducing a third person to break any other contract between him and the plaintiff. That was decided by this court in Walker v. Cronin, 107 Mass. 555. . . . No case has been cited which holds that a right to compete justifies a defendant in intentionally inducing a third person to take away from the plaintiff his contractual rights.''

The case of Alcazar Amusement Company v. Amusement Company, 204 Ala. 509, 86 So. 212, is quite similar to the case at bar. There, a corporation, known as the Select Pictures Corporation, had entered

into a contract with complainant whereby the complainant was granted the right to exhibit certain "first run" motion pictures in the city of Birmingham, Alabama. Defendant corporation, a competitor of complainant, subsequently entered into a contract with the Select Pictures Corporation to exhibit the same pictures as "first run" pictures in the city of Birmingham during the life of complainant's contract. Complainant sought injunctive relief, and, in upholding complainant's right to such equitable relief, the court said: "A third party who, with knowledge of the existence of a valid contract between others, interferes with its performance or consciously contributes to the impairment of the rights of a party thereto to avail of its obligations (especially wherefrom a selfish advantage or benefit may accrue to such third party), even though by means of a subsequent engagement between such third party and one of the contracting parties with respect to the subject-matter of the contract to which such third party is a stranger, commits a tort and is liable for the consummated wrong, independent of a right of action against the other party to the contract, if the remedy at law is adequate and complete, and the threatened or impending commission of such a tort may be enjoined by the party whose enjoyment of existing contractual rights are thus endangered; the application of the doctrine not being restricted to contracts for personal services. . . . The tortious wrong thus definitely threatened or consummated by a stranger to the contract is, in a distinctive sense, independent of the contract, though arising from the relation it establishes and the obligations it imposes; and hence the party whose rights under the contract are thus threatened may be entitled to the injunctive relief indicated, notwithstanding specific performance of the contract cannot be compelled because of the nature of the contract, or of the impracticability of judicial superintendence of its performance, or of the absence of jurisdiction over the other contracting party."

In New York Phonograph Company v. Jones, 123 Fed. 197, the doctrine is thus concisely stated, quoting from Standard Fashion Company v. Siegel-Cooper Company, 52 N. Y. Supp. 433: "Where there was an exclusive contract between the plaintiff and one defendant, the plaintiff, as against the other defendant, who, with notice of the plaintiff's rights, had contracted with its co-defendant, was entitled to relief upon the ground, not of any contractual relation, but that such other defendant had engaged knowingly in a plan or contract to wrong and injure the plaintiff."

The doctrine contended for by appellant herein is thoroughly discussed, and amplified by quotation of authorities in support thereof, in Singer Sewing-Machine Company v. Union Button-Hole Company, 22 Fed. Cas. 220, Case No. 12904, wherein it is ruled that an

injunction may be granted to restrain acts in violation of a lawful contract, although the nature of the contract is such that specific performance cannot be enforced. See, also, Montgomery Enterprises v. Empire Theatre Company, 204 Ala. 566, 86 So. 880, for a full discussion of the doctrine herein contended for by appellant.

II. Respondents contend that, inasmuch as the petition expressly alleges that plaintiff's business has been destroyed by the alleged acts of defendants, resulting in damage to plaintiff in the sum of $20,000, for which plaintiff prays judgment, such allegations amount to an admission by plaintiff that the acts complained of in the petition were past and fully consummated, and are therefore not the subject of injunctive relief, and show that plaintiff has an adequate remedy at law for damages; furthermore, that the petition does not allege or show that plaintiff is threatened with irreparable injury, and therefore fails to state a cause of action entitling plaintiff to injunctive relief.

We do not regard the fact that plaintiff has alleged in the petition that its business has been destroyed and that it has suffered damage in the sum of $20,000 as conclusively indicative that plaintiff has a complete and adequate remedy at law for damages, so as to preclude plaintiff from seeking and obtaining injunctive relief. Plaintiff's right to recover pecuniary damages in this equity action is merely incidental to its right to equitable relief. Assuming that the alleged acts of defendants in injuring plaintiff in the lawful conduct of its business, under the exclusive privileges granted by its alleged contract with the American Nokol Company, had resulted in the complete destruction of its business, nevertheless plaintiff's said contract, according to the allegations of the petition, had several years yet to run at the time of the commencement of this action, and plaintiff still has the exclusive right to carry on said business with-. in the territory allotted to it by said alleged contract, which right, we think, plaintiff may assert and protect by this action in equity. Furthermore, plaintiff is entitled to carry out its contract with the American Nokol Company with its own organization of salesmen and employees, by its own methods of advertisement, and according to its own method of installation of the oil-burner. Who can say but that plaintiff can operate and conduct its business under the alleged contract more economically and just as effectively as defendants? And who can say what plaintiff's profits might have been, and what its prospective profits may be, if permitted to carry on its business without interference of others, under the exclusive rights and privileges granted by the alleged contract between plaintiff and the American Nokol Company? Must plaintiff stand by helpless until the termination of the life of the alleged contract in order that it

may determine, as best it can, the amount of its pecuniary damage and then sue to recover such damage in an action at law? The petition alleges that "plaintiff has been rendered unable to procure the said burner, and has been rendered unable to keep and perform its contracts with its customers for the sale and installation of said burner." If plaintiff recover of the defendant herein a judgment at law for pecuniary damages, might it not thereafter suffer further damage and loss by reason of its liability for breach of the contracts with its customers from its inability to obtain the burners it had in turn agreed to install for its customers? And who can say of what sales and profits plaintiff has been deprived by the alleged acts of defendants, unless a court of equity, with its power to draw out the proofs from the consciences of the defendants by means of discovery and accounting, can examine into the alleged wrongful business conducted by defendants, the various sales of Nokol burners by them made, and the profits which they derived from those sales? It appears to us, from the very propounding of the foregoing questions, that plaintiff has no adequate, complete and efficient remedy at law, and hence plaintiff may invoke the aid of a court of equity in the protection of its alleged contractual rights. Our conclusion herein has the support of respectable judicial authority.

In Beekman v. Marsters, supra, 195 Mass. 205, it is said: "The finding of the master as to the damages which the plaintiff is *likely* to suffer shows that an action at law would not give him an adequate remedy. Where the plaintiff proves that the defendant unlawfully interferes, or threatens to interfere, with his business or his rights under a contract, and further makes out in proof that damages will not afford an adequate remedy, equity will issue an injunction."

In Florence Sewing Machine Company v. Sewing Machine Company, 110 Mass. 1, plaintiff had been given an exclusive license by defendants to use certain patents on sewing machines upon payment of a certain royalty, and it was alleged that defendants had agreed that no license should be given to other persons to use said patents on sewing machines for a less royalty. Plaintiff filed a bill in equity, alleging that defendants had breached the contract by subsequently licensing another person to use the patents for a less royalty, and were threatening to terminate and cancel plaintiff's license unless it continued to pay the larger royalty. Plaintiff prayed injunctive relief, and defendants demurred to the bill on the ground that plaintiff had a complete and adequate remedy at law. Said the court in overruling the demurrer: "The plaintiff's title being derived from the licensors (defendants), they have peculiar advantages for bringing the plaintiff's title into doubt, and deterring the public from incurring the risk of buying a machine which they may not be able to use legally, and the use of which may involve them in law suits. If the

sales are greatly diminished, a large amount of the plaintiff's property, which is invested in the manufacture, will thereby lose a great part of its value; and if the sales shall fall below 250 machines per quarter, the license will thereby be forfeited. It would be difficult, if not impossible, to estimate with any degree of accuracy the amount of this injury; and it would be practically impossible to repair it; so that the injury threatened would be not only very great, but irreparable. . . . And an action at law furnishes no remedy against the threatened irreparable injury. It would leave the plaintiff defenseless against such injury, however tortious.''

But respondents contend that the petition is fatally defective because it does not appear from its allegations that the injury complained of is irreparable, or that the defendants are insolvent. Section 1969, Revised Statutes 1919, provides: ''The remedy by writ of injunction . . . shall exist in all cases where . . . an irreparable injury to real or personal property is threatened, *and to prevent the doing of any legal wrong whatever, whenever in the opinion of the court an adequate remedy cannot be afforded by an action for damages.''* (Italics ours.) Under the foregoing statute, we have ruled that it is not necessary that the defendant shall be insolvent, or the injury irreparable, in order to sustain the right to injunctive relief, if it be shown that an action for damages will not afford an adequate remedy. [Turner v. Stewart, 78 Mo. 480; Carpenter v. St. Joseph, 263 Mo. 705.]

III. Respondents insist that the American Nokol Company, which is the opposite party to the alleged contract, is a necessary and indispensable party to the instant action, and hence the trial court committed no error in ruling that ''the cause cannot be properly adjudicated as a suit in equity on any prayer for injunctive relief without the presence of that defendant in court.'' Appellant, on the other hand, contends that the several defendants, including the non-appearing American Nokol Company, are, in substance, alleged in the petition to be joint tortfeasors, and the appellant may, under the provisions of our Code of Civil Procedure, elect to join all such wrongdoers as defendants, or may sue as many as plaintiff may think proper. The section of the Code relied upon by appellant (Sec. 1160, R. S. 1919) reads: ''Every person who shall have a cause of action against several persons, . . . and who shall be entitled by law to one satisfaction therefor, may bring suit thereon jointly against all or as many of the persons liable as he may think proper . . .'' We have ruled that the foregoing statute is applicable to actions against joint tortfeasors. [Hutchinson v. Safety Gate Co., 247 Mo. l. c. 110.]

Regardless, however, of whether the cited code-section may be deemed applicable only to law actions, rather than applicable to both law and equity actions (a matter not now necessary for us to discuss or rule), nevertheless we conclude, by the weight of judicial authority, that defendant American Nokol Company was not a necessary and indispensable party herein, and therefore the trial court erred in refusing to permit the appellant to proceed with its evidence and proof against the appearing defendants herein.

In 21 Corpus Juris, page 270, the text-writer, after announcing (on page 258) the general rule of equity pleading to be "that all persons who are materially interested in the event of the suit or in the subject-matter, however numerous, should be made parties, either as plaintiffs or as defendants," thereupon states the exceptions to the general rule, thus: "The general rule that all persons materially interested in the suit must be made parties is subject to a number of well-defined exceptions, and its application rests more or less in the sound discretion of the court. The court will not allow a rule respecting parties adopted for convenience to operate so as to defeat the ends of justice. Accordingly, where, by reason of their absence from the jurisdiction of the court, or excessive number, or the fact that they are unknown, or other sufficient cause, it is wholly impracticable or exceedingly difficult or inconvenient to make all persons materially interested parties, the court will dispense with the general rule and proceed to a decree, where this can be done without manifest injustice either to the parties before the court or to interested parties who have not been brought in, but not otherwise. The court must go as far as it can in affording relief without doing inequity to any one."

The precise point was expressly ruled in New York Phonograph Company v. Jones, 123 Fed. 197, wherein the complainant held an exclusive contract, or license, to sell phonographs in the State of New York made with certain non-residents of that State, upon whom service of process apparently could not be had in New York. Complainant sued in equity to enjoin the individual defendant from purchasing phonographs and supplies from the said non-residents, from selling the same within the State of New York, and for an accounting. A demurrer was filed to the bill, and, in overruling the demurrer, Hazel, J., said: "The gravamen of the bill of complaint, after charging a conspiracy by Mr. Edison and companies alleged to be under his control to avoid the contracts for licenses, is that the defendant, with knowledge of the complainant's exclusive territorial right to sell the patented phonograph and supplies therefor, violated those rights by purchasing phonographs from various companies and corporations controlled by Mr. Edison, and also from Mr. Edison individually, and selling them within the restricted territory. The

314

bill substantially alleges that such companies and corporations, parties to the conspiracy, derived their rights entirely from Mr. Edison, and therefore such conspirators, in legal effect are complainant's licensors. . . . It is contended by the demurrant that the National Phonograph Company is a necessary party defendant, for the reason that this court cannot adjudicate upon the questions involved without the presence of the party whose contract right is assailed. This contention appears to be without merit, although on the argument I was of the opinion that such was the rule. The knowledge which is charged to the defendant of the contractual relations is the essence of the charge. Defendant's part in a scheme or plan to injure the complainant by wrongfully inducing Mr. Edison and the companies controlled by him to sell phonographs to the defendant is the specific, wrong for which redress is sought. This is stated in the bill with reasonable fullness and particularity. Under such circumstances, the rule is that a person receiving injury from the tortious acts of others has a remedy against one or all of the wrongdoers, and may enforce that remedy against one or all at his election. [Citing authorities.] . . . The ground of demurrer that there is defect of parties, and that the bill lacks equity, is not tenable.''

In Florence Sewing Machine Company v. Sewing Machine Company, 110 Mass. 1. c. 12, it is said: ''The threatened acts of notice and publication being tortious on the part of these defendants, no injustice will be done to parties out of the jurisdiction by restraining these defendants without joining them. A party may be enjoined against a tortious act, even if other parties interested with him are within the jurisdiction and not joined. [Wilkinson v. Parry, 4 Russ. 272, 274; Attorney-General v. Wilson, Cr. and Ph. 1. c. 28.] Much more if they are not within it.''

In Montgomery Enterprises v. Empire Theatre Company, 204 Ala. 566, 86 So. 880, 889, it is said: ''Here the resident defendants are proceeded against as tortfeasors, against whom relief can be had in the absence of service on the non-resident joint tortfeasor, sending the photoplay (the personal property, the object or subject of the contract) into the State to violate its contract with complainant by its exhibition by a business rival.''

So, in Alcazar Amusement Company v. Amusement Company, 204 Ala. 509, 86 So. 209, the point was expressly ruled, thus: ''This brings us to the question whether the court below had jurisdiction of the cause made by the amended bill, whereby injunction is sought to prevent a third party, a resident of Alabama, from enjoying the benefit, in Alabama, of a conscious aiding of a party to an existing contract to breach it. . . . The party whose rights under the contract are thus threatened may be entitled to the injunctive relief indicated, notwithstanding specific performance of the contract can-

not be compelled because of the nature of the contract, or of the impracticability of judicial superintendence of its performance, or *of the absence of jurisdiction over the other contracting party.* [Citing authorities.]"

The principle is thus aptly stated by the Federal Supreme Court, in Osborn v. Bank, 9 Wheat. 1. c. 842, 843: "But if the person who is the real principal, the person who is the true source of the mischief, by whose power, and for whose advantage, it is done, be himself above the law, be exempt from all judicial process, it would be subversive of the best-established principles to say that the laws could not afford the same remedies against the agent employed in doing the wrong, which they would afford against him, could his principal be joined in the suit."

We conclude, therefore, that American Nokol Company is not a necessary and indispensable party to this action, and the trial court erred in so holding.

IV. Respondents apparently contend that, inasmuch as the petition alleges that the territory of the city of St. Louis was omitted, by mutual oversight, inadvertence and mistake of the parties from the written instrument or draft of the contract between appellant and the American Nokol Company, and inasmuch as appellant asks for reformation of such written instrument or draft of the contract so as to correct such mutual mistake, appellant therefore cannot obtain injunctive relief herein against the appearing resident defendants (who are not parties to said contract) until said written draft of the contract is reformed, which relief cannot be granted herein because the American Nokol Company (which is a party to said contract) is a non-resident and is not in court. Otherwise stated, if we correctly understand respondent's contention, it is that the petition charges the appearing defendants with doing business and operating only and solely within the territory of the city of St. Louis and that such territory is not included in the written instrument or draft of said alleged contract, and, therefore, the petition does not charge the appearing defendants with any unlawful or wrongful interference with plaintiff's rights under the written instrument or draft of the contract with American Nokol Company, as said written instrument now stands unreformed. As we understand respondents' contention, it amounts to this: Since the American Nokol Company is not within the jurisdiction of the court, and the written contract between plaintiff and American Nokol Company cannot be reformed without the presence, in court, of that company, then plaintiff must first sue in Illinois, or wherever it may obtain service of process upon said company, for reformation of said written contract, and, after obtaining a decree of reformation, it may then (and not till then) bring a suit in Missouri against the resident defendants.

We think, however, that respondents have misconceived and wrongly interpreted the true meaning and intendment of the language of the petition. As we interpret the true meaning and intendment of the petition, it charges, in substance and effect, that plaintiff and American Nokol Company, on August 1, 1922, entered into a contract whereby the said American Nokol Company, as the owner of the certain patented device known as the Nokol Automatic Oil Burner, "constituted and authorized the plaintiff as sole and exclusive dealer in the said burner in *certain territory*, to-wit, the *City* and County of *St. Louis* and the State of Missouri, and the counties of St. Clair and Madison, in the State of Illinois, and gave to, and invested the plaintiff with, the sole and exclusive right to purchase, sell and install and deal in the purchase and sale and installation of said burner *within the said territory*," but that, when said contract was reduced to writing and was signed by the parties, it did not correctly state, or set forth, the *true* or *actual* understanding and agreement of the parties, but "by mutual oversight, inadvertance and mistake of both the parties to the said contract, 'the city of St. Louis' was omitted from the *draft* of the said contract and *written* document." The petition furthermore charges, in substance and effect, that the appearing resident defendants, "well knowing all the time of the plaintiff's said contract (i. e., the *true* or *actual* contract) with the defendant American Nokol Company and its (plaintiff's) exclusive rights thereunder," viz., the sole and exclusive right to purchase, sell, install and deal in the patented burner within the territory prescribed by the *true* or *actual* contract or agreement between plaintiff and American Nokol Company, to-wit, "*the city* and county of *St. Louis* and the State of Missouri, and the counties of St. Clair and Madison, in the State of Illinois," threaten and intend "to sell and install, and to conduct the business of selling and installing said burner in the *said* territory, and have made sales and are proceeding further to make sales thereof in the *said* territory," namely, the territory, *including the city of St. Louis*, prescribed by the *true, actual or real* agreement between plaintiff and American Nokol Company. To give to the language of the petition any other interpretation or intendment would, in our opinion, be giving to such language a strained, hypercritical and highly technical interpretation and intendment. According and allowing to the allegations of the petition every reasonable intendment, as we must do upon objection to the introduction of any evidence thereunder, we do not find the allegations to be inconsistent; nor do we believe and find that plaintiff has admitted by the allegations of the petition (as respondents contend) that the territory of the city of St. Louis was not included in the *true* or *actual* agreement alleged to have been made by and between plaintiff and American Nokol Company, or that plain-

tiff has admitted by such allegations that the appearing resident defendants have not violated, or interfered with, any rights of plaintiff under the *real* or *actual* contract alleged in the petition.

While it may be conceded that the written instrument or draft of the alleged contract cannot be reformed without the appearance, and presence in court, of the American Nokol Company, one of the parties thereto, and that reformation cannot be decreed herein against said absent and non-appearing party to the said written instrument, we think that it does not follow that plaintiff is not entitled to the equitable relief prayed against the appearing resident defendants (respondents herein). As regards the respondents, plaintiff's suit is not a direct action upon the alleged contract; nor is plaintiff's action brought to charge the appearing resident defendants (respondents) upon any contract or agreement, parol or written. Insofar as respondents are concerned, plaintiff's action is brought to enjoin and restrain respondents from knowingly and wrongfully, or tortiously, interfering in any manner with the exclusive rights and privileges of plaintiff under and by virtue of the alleged *actual* and *real* agreement between plaintiff and American Nokol Company. Respondents are strangers to that agreement and, hence, it is immaterial, so far as respondents are concerned, whether such agreement was made by parol or in writing, for respondents cannot invoke the Statute of Frauds against such agreement. [Railway Company v. Clark, 121 Mo. 169; Bauer v. Implement Company, 148 Mo. App. 652; Schindler v. Sorbitz, 268 S. W. 432.] It does not concern respondents whether the written draft of the agreement between plaintiff and American Nokol Company speaks the *true* and *actual* agreement between those parties, or whether the written instrument should be reformed so as to speak the *true* agreement of those parties. So long as respondents have notice and knowledge of the *real, true and actual* agreement between plaintiff and American Nokol Company, and of the exclusive territorial rights and privileges granted to plaintiff by such *real, true* and *actual* agreement (which knowledge is ascribed to respondents by the allegations of the petition), plaintiff, in our opinion, is entitled to the equitable relief prayed against respondents, notwithstanding that plaintiff is not herein entitled to reformation of the written instrument or draft of the alleged agreement against the American Nokol Company, because of its non-appearance and absence from the jurisdiction of the court.

In our opinion, the petition, or bill, herein states facts sufficient to entitle plaintiff (appellant) to the equitable relief prayed against the appearing defendants, who are the respondents here; consequently, the trial court erred in sustaining the appearing defendants' objections to the introduction of evidence and in dismissing the bill. It follows that the judgment *nisi* must be reversed and the cause re-

318

manded with directions to the circuit court to reinstate the petition, or bill, and to proceed with the trial of the issues raised by the pleadings herein. It is so ordered. *Lindsay, C.,* concurs.

PER CURIAM.:—This case having been transferred to Court en Banc, the foregoing divisional opinion of SEDDON, C., is adopted as the decision of the court. All of the judges concur.