PEERLESS PATTERN CO. *v.* GAUNTLETT DRY GOODS CO.

1. INJUNCTION—ADEQUATE REMEDY AT LAW—CONTRACTS.
    A bill for specific enforcement of a contract to buy patterns exclusively from complainant and for an injunction to restrain defendant from buying of other pattern manufacturers, should not be dismissed on demurrer raising the objection that the remedy of specific performance would be impracticable, so long as the negative part of the contract can be enforced by injunction, but the remedy of enforcing the contract specifically may be denied if, in the court's discretion, it appears at the hearing to be impracticable.

2. SAME—STATUTES—PUBLIC POLICY.
    The contract is not void as against public policy or as in violation of Act No. 329, Pub. Acts 1905.

Appeal from Washtenaw; Kinne, J. Submitted April 8, 1912. (Docket No. 58.) Decided July 11, 1912.

Bill by the Peerless Pattern Company against the Gauntlett Dry Goods Company for specific performance of a contract. From an order overruling a demurrer to complainant's bill, defendant appeals. Affirmed.

*Edward B. Benscoe,* for complainant.

*George S. Wright* and *A. J. Sawyer,* for defendant.

MOORE, C. J. This is an injunction bill and one for specific performance of a contract. A demurrer was interposed to the bill of complaint. It was overruled, which action is sought to be reviewed here.

The complainant is the maker of paper patterns. The defendant is the proprietor of a large dry goods store. A written contract was made between the parties, the material parts of which are as follows:

"CITY OR TOWN—MILAN.
                                    "STATE_____MICH.
"THE PEERLESS PATTERN COMPANY,
              "192½ to 200 Greene Street,
                                    "New York City.
"(1) Please send us an assortment of Peerless patterns including the May, 1911, issue, amounting to $200.00 at 5 cents each pattern, payable as follows: $100 in thirty days, and the balance $100 to remain as a standing debit during the term of this agreement at 4 per cent. interest per annum, payable semi-annually. * * *

"(5) We will reorder at least once each week, all patterns that we sell, so as to keep our assortment complete. We will offer and display the patterns for sale on the main floor. We will not handle directly or indirectly any other make of pattern. We will pay for all goods on or before the tenth day of the month following the month of shipment and will pay all transportation charges to and from your New York office.

" (6) It is understood that you are to exchange at full purchase price all patterns in our stock that you discard in January and July for other patterns to be reordered by us thereafter. After the return by us of such discarded patterns, if our remaining stock exceeds the amount of our original assortment we may return you the excess of such sum in Peerless patterns purchased from you to be selected

out of our stock by us; such return excess patterns to be credited to our exchange account at full purchase price. * * *

" (7) This order is to take effect on acceptance by you and to remain in force for a term of five years from the date of the first shipment to us from term to term thereafter unless either party shall give notice of desire to cancel in writing within thirty days before the expiration of any term. If such notice is given by us, we will continue the agreement for four months thereafter in order to give you an opportunity to transfer the account. * * *

" Purchaser's Name,

"THE GAUNTLETT DRY GOODS CO.

"Date March 2, 1910.

"Accepted: THE PEERLESS PATTERN CO.,

"By E. L. Genth."

The bill of complaint, after the formal part thereof, set out the making of the contract. It avers: That complainant entered upon the performance thereof; that defendant failed and refuses to perform its part thereof; that it began selling the patterns of a rival concern, and prayed:

" (2) That the said defendant, the Gauntlett Dry Goods Company, its attorneys, agents, and servants, may be restrained by an injunction of this honorable court from selling or handling, directly or indirectly, during the term of said contract or agreement, any make of pattern other than that of your orator.

" (3) That the said defendant, the Gauntlett Dry Goods Company, its attorneys, agents, and servants, may be decreed specifically to perform all and singular the terms, conditions, and stipulations of said agreement, by it to be performed, and it be compelled to order and buy from your orator and expose for sale, as by said agreement stipulated, the said patterns of your orator, your orator being ready, willing and able, and hereby offering specifically to perform said contract or agreement as on its part stipulated to be performed.

"(4) That your orator may be decreed to recover from the said Gauntlett Dry Goods Company, the said defendant, for the price and value of goods, patterns, fashion guides, and fashion books prepared for the defendant and shipped to it, amounting in the neighborhood of $300."

A prayer for general relief followed.

It is claimed the demurrer should have been sustained because:

*First.* It appears from the allegations in the bill of complaint that the complainant has a full, adequate, and complete remedy at law. That if the allegations therein contained are true, the only relief to which complainant is entitled is a money judgment at law for damages.

*Second.* It appears from the contract for which suit was commenced and which contract is made a part of the bill of complaint, that defendant was prohibited from entering into any such contract for the reason that all such contracts are declared to be against public policy, illegal, and void.

We consider the questions in the order stated:

*First.* In support of this contention counsel cite *Grandchamp* v. *McCormick*, 150 Mich. 232 (114 N. W. 80); *Detroit Trust Co.* v. *Old National Bank*, 155 Mich. 61 (118 N. W. 729), and many other cases. An examination of these cases will show they are not controlling in this case. The case at bar is more like *Standard Fashion Co.* v. *Siegel-Cooper Co.*, 157 N. Y. 60 (51 N. E. 408, 43 L. R. A. 854, 68 Am. St. Rep. 749), where, among other things, it is said:

" But, even if, upon a trial of the action, specific performance of the contract in its entirety were refused as impracticable, still the bill should be retained as one permitting an injunction, in the sound discretion of the court, to restrain the defendants from violating the negative and severable covenant of the Siegel-Cooper Company, that it would not 'sell, or allow to be sold, on its premises, during the duration of this (the) contract, any other make of paper patterns' than those of the plaintiff. The learned appellate division, one of the judges dissenting, overruled the demurrers on this ground, holding that the court should extend its remedy as far as it is able and thus prevent the principal defendant not only from making money by breaking its agreement, but from inflicting a double wrong upon the plaintiff, by depriving it of the right to sell, and conferring that right on a business competitor. We think this is a sound and just conclusion, because it will compel the Siegel-Cooper Company to either perform its agreement, or lose all benefit from breaking it and at

the same time will shield the plaintiff from part of the loss caused by the breach, if persisted in. *Lumley* v. *Wagner*, 1 De G. M. & G. 604; *Donnell* v. *Bennett*, L. R. 22 Ch. Div. 835; *Montague* v. *Flockton*, L. R. 16 Eq. 189; *Singer Sewing Machine Co.* v. *Union Buttonhole & E. Co.*, 1 Holmes, 253 [Fed. Cas. No. 12,904]; *Chicago & A. R. Co.* v. *New York, L. E. & W. R. Co.* [C. C.], 24 Fed. 516, 521; *Goddard* v. *Wilde* [C. C.], 17 Fed. 846; *Western Union Tel. Co.* v. *Union Pacific R. Co.* [C. C.], 3 Fed. 423, 429; *Western Union Tel. Co.* v. *Rogers*, 42 N. J. Eq. 311 [11 Atl. 13].

"The injunction, when granted, may not be absolute, but may be based on some equitable condition that will prevent either party from taking advantage of the other, such as the waiver by the plaintiff of the breach of the contract by the principal defendant. The question raised by the demurrer does not relate to any matter of discretion or propriety, but to the power of the court to grant any relief, conditional or otherwise. We are satisfied with the opinion below upon the subject, and should adopt it as our own without comment, but for a point not thus far considered, which seems to us a conclusive answer to the demurrers, and which, if overlooked, might lead to some confusion. The action is for the specific performance of a lawful contract, duly executed by both parties thereto. It is capable of performance by both, and there is no reason for nonperformance by either. A court of equity has jurisdiction of such actions, and the complainant sets forth the contract—readiness to perform on one side, a refusal to perform on the other, and facts showing no adequate remedy at law. A complete cause of action is, therefore, alleged, and the only reason for not awarding general relief to the plaintiff is that its nature is so complicated as possibly to require a multiplicity of orders by the court in its efforts to superintend the details of an extensive and peculiar business. This fact does not deprive the court of jurisdiction, but justifies a refusal, in its sound discretion, to exercise it. It confers no right upon either party. The court does not refuse to act because the defendants object to its acting, for it would refuse, under the circumstances, if both parties requested it to proceed; but it refuses because the execution of its decree would require protracted supervision. It is the difficulty of enforcing, not of rendering, judgment, that causes it to hesitate. The office of a demurrer is to sweep away a defective pleading, and in the case before us it at-

tacks the substance of the complaint; yet the complaint is good in substance, for it sets forth a cause of action in equity. While it is true that the court, in its discretion, may not hear the cause, or, after a hearing, may refuse relief owing to the difficulty of enforcing its decree, still this does not make the complaint defective, nor authorize a general demurrer, which 'must be founded upon an absolute, certain, and clear proposition that, taking the charges in the bill to be true, the bill would be dismissed at the hearing.' Beach on Equity Practice, § 225. Upon the facts before us, it is in the power of the court to enforce the agreement the same as in the case of railroad contracts, but the difficulties attending the enforcement are so great that the court would ordinarily refuse to undertake it, as there is no public interest involved. As there was complete jurisdiction and a perfect cause of action against both defendants, the demurrers must be overruled. *Coatsworth* v. *Lehigh Valley R. Co.*, 156 N. Y. 451 [51 N. E. 301]."

See, also, *St. Regis Paper Co* v. *Lumber Co.*, 173 N. Y. 149 (65 N. E. 967); *McCall Co.* v. *Wright*, 198 N. Y. 143 (91 N. E. 516, 31 L. R. A. [N. S.] 249); *Powell* v. *Dwyer*, 149 Mich. 141 (112 N. W. 499, 11 L. R. A. [N. S.] 978); *Buckhout* v. *Witwer* 157 Mich. 406 (122 N. W. 184); 22 Cyc. pp. 769–771.

*Second.* Is the contract void as against public policy? An answer to this question in the negative is found in *Buckhout* v. *Witwer, supra,* and the cases cited therein. We do not think the case is within the inhibition of the statute. (Act No. 329, Pub. Acts 1905.)[1]

The decree of the court below is affirmed, with costs, and defendant is given 20 days in which to answer.

STEERE, BROOKE, and STONE, JJ., concurred with MOORE, C. J.

OSTRANDER, J. I concur upon the ground that the contract in question is not in restraint of trade within the meaning of the statute.

MCALVAY, J., concurred with OSTRANDER, J. BLAIR and BIRD, JJ., did not sit.

---

[1] Counsel did not refer to or rely on the similar statute; i. e., Act No. 229, Pub. Acts 1905.— REPORTER.