E. L. Husting Company, Appellant, vs. Coca Cola Company and others, Respondents.

*March 13—October 13, 1931.*

358

*William L. Tibbs* and *Brooke Tibbs,* attorneys, and *Irving A. Fish* of counsel, all of Milwaukee, for the appellant.

For the respondents there was a brief by *Fawsett & Shea* of Milwaukee, and oral argument by *Edmund B. Shea.*

The following opinion was filed June 12, 1931:

WICKHEM, J. The first contention of the appellant is that the evidence showed a conspiracy between the defendants to defeat plaintiff's rights under his exclusive sales contract. In its findings of fact the trial court found that the Coca Cola Company consented to the exclusive contract entered into January 10, 1917, by the Western Bottling Company and the plaintiff, and that otherwise it had no participation in that transaction. The court further found that the action of the Western Bottling Company in assuming to cancel the agreement of January 10, 1917, was not caused, induced, or procured by the Coca Cola Company, and that there was no conspiracy or concerted action between the Coca Cola Company and the Western Company to bring about such cancellation; that the Coca Cola Company has never owned any stock of the Western Company or controlled its affairs; that the agreement of March 20, 1923, between the Western Company and the Wisconsin Company was not in furtherance of any conspiracy or design to secure for the Western Company or for the Coca Cola Company a higher price for syrup sold in Milwaukee county; that the Coca Cola Company had no part in procuring or bringing about the agreement of March 20, 1923, between the West-

ern Company and the Wisconsin Company except that it indorsed its consent upon the contract.

It is not seriously contended by the appellant that these findings are not sustained by the evidence, and it is our conclusion that they are so sustained. It seems clear that in so far as appellant's case rests upon a charge of conspiracy it must fail. However, it is not considered that the establishment of a charge of conspiracy is essential to plaintiff's success in this action against the Milwaukee and Wisconsin companies. This is an action by plaintiff under a contract with the Western Company, giving to plaintiff the exclusive rights to sell a unique product in a defined territory, for equitable relief against third persons who, it is charged, have wrongfully invaded the territory by virtue of a contract with the Western Company. The basis of plaintiff's claim against the Wisconsin and Milwaukee companies is that the Wisconsin Company has either induced the Western Company to break its contract with the plaintiff or has maliciously participated or co-operated in the breach of the contract by such party. The contract of January 10, 1917, gave plaintiff valuable rights. This contract entitled the plaintiff to the exclusive sale of a highly advertised and popular beverage, and one which could not be obtained from any source other than the Western Bottling Company. Upon a breach of this contract by the Western Company it is clear that no legal remedy would be adequate to redress the wrong to plaintiff. Plaintiff could not replace itself in the market because of the character of the product and the manner of its vending, and the damage to plaintiff would be very difficult to ascertain. *Butterick Pub. Co. v. Rose,* 141 Wis. 533, 124 N. W. 647. Under such circumstances it would seem that plaintiff, as against the Western Bottling Company, would, upon a breach of its contract, be entitled to specific performance in some form. While it is possible that it might not be entitled to enforcement of the affirmative covenant to sell the syrup

because of the fact that specific performance would involve the supervision by a court of equity of the terms of a continuing contract, it seems to be sufficiently established that that relief would be given by injunction against breach of the expressed or implied negative covenant which is always present in this type of contract. 4 Pomeroy, Eq. Jur. (4th ed.) §§ 1710, 1717, 1718. The result would be that equity would enjoin the Western Company from selling to the Wisconsin Company, assuming that this constituted a breach of plaintiff's contract. *Standard F. Co. v. Siegel-Cooper Co.* 157 N. Y. 60, 51 N. E. 408, 43 L. R. A. 854; *Peerless P. Co. v. Gauntlett D. G. Co.* 171 Mich. 158, 136 N. W. 1113, 42 L. R. A. n. s. 843; *Posner Co. v. Jackson,* 223 N. Y. 325, 119 N. E. 573; *Shubert T. Co. v. Rath,* 271 Fed. 827; *Nokol Co. v. Becker,* 318 Mo. 292, 300 S. W. 1108; *Singer S. M. Co. v. Union B. H. & E. Co.* 22 Fed. Cas. p. 220. It is also well established that one who maliciously induces another to breach a contract with a third person is liable to such third person for the damages resulting from the breach. *Northern Wis. Co-op. Tobacco Pool v. Bekkedal,* 182 Wis. 571, 197 N. W. 936. Where the situation is such that the legal remedy of damages is for any reason inadequate, equity will enjoin such interference by a third party. This doctrine had its inception with the case of *Lumley v. Gye,* 2 Ell. & Bl. 216. The doctrine of that case, which was limited to malicious interference with contracts for personal service, has been followed and extended by numerous other cases. It now extends to contracts other than those involving personal services, and the definition of "malice" has been broadened to include unjustified interference with the contractual relationship. *Fleckenstein Bros. Co. v. Fleckenstein,* 66 N. J. Eq. 252, 57 Atl. 1025; *Beekman v. Marsters,* 195 Mass. 205, 80 N. E. 817; *Nokol Co. v. Becker,* 318 Mo. 292, 300 S. W. 1108; *Alcazar A. Co. v. Mudd & Colley A. Co.* 204 Ala. 509,

86 South. 209; *Lanyon v. Garden City S. Co.* 223 Ill. 616, 79 N. E. 313, 9 L. R. A. n. s. 446. See, also, 36 Harvard Law Review, 663; 3 Williston, Contracts, p. 2573. In *Campbell v. Gates,* 236 N. Y. 457, 141 N. E. 914, it is said:

"The great weight of authority in this country and in England is to the effect that if A. has a legal contract with B., either for the rendition of service or any other purpose, and C., having knowledge of the existence thereof, intentionally and knowingly, and without reasonable justification or excuse, induces B. to break the contract, by reason of which A. sustains damage, an action will lie by A. against C. to recover the same. . . . The action of C. is malicious, in that, with the knowledge of A.'s rights, he intentionally and knowingly, and for unworthy or selfish purposes, destroys them by inducing B. to break his contract. It is a wrongful act, done intentionally, without just cause or excuse, and from this a malicious motive is to be inferred. This does not necessarily mean actual malice or ill-will, but the intentional doing of a wrongful act without legal or social justification."

In *McLennan v. Church,* 163 Wis. 411, 158 N. W. 73, this court said:

"Curby knew when he negotiated with the Churches and dealt with them that plaintiff held the contract in question, and knew all the circumstances requisite to charge him with knowledge that such contract had not lapsed. The fact that he did not know the legal effect of such circumstances, and ignorantly supposed that a mere default of appellant terminated his contract rights, and in that state of mind dealt with the Churches, may relieve him from any taint of moral turpitude, but not of remediable responsibility. Fraud in law is remediable as well as fraud in fact."

Applied to this case, we think it is clear that had the Wisconsin Company, prior to any breach by the Western Company, approached the latter and persuaded it that its business interests would be better served by ceasing business re-

lations with the plaintiff and giving an exclusive contract to the Wisconsin Company, the Wisconsin Company would thereby render itself liable not merely in damages but to a suit for an injunction by the plaintiff. The legal remedy of damages in such a case, in our judgment, is plainly inadequate for reasons heretofore set out. However, it is maintained by the respondents that the cases heretofore cited have no application to the facts in this case; that in this case the breach of the contract by the Western Company occurred in January, 1920; that at the time of the breach the Wisconsin Company not only had no part in inducing it, but was not even in existence at that time; that consequently there is no causal relation between any act of the Wisconsin Company and the breach by the Western Company.

Appellant cites in support of its contention the case of *Northern Wis. Co-op. Tobacco Pool v. Bekkedal, supra.* In that case the plaintiff brought an action to restrain the defendant from interfering with various contracts entered into by the plaintiff with tobacco growers in Wisconsin. The lower court granted the injunction and the judgment was affirmed upon appeal. Upon rehearing the judgment was modified, the court stating:

"There is one respect, however, in which it is considered the order should be modified. If a member should voluntarily sever his relations with the pool by breaching his contract and withdrawing his membership therein and placing his tobacco for sale upon the market, no reason is perceived why appellants should be denied the privilege of buying his crop. To that extent and for that purpose the injunctional order or judgment is amended by inserting after the words above quoted the following: 'Providing, that these restraints shall not prohibit the defendants from purchasing tobacco from those who shall have voluntarily breached their contract with respondent, severed their relations therewith, and withdrawn their membership therein.'"

There are two reasons why we think this case does not govern. In the first place, the contract of the Western Company was a continuing contract of the type which could be enforced, at least as to its negative covenant, by injunction. The breach involved in the attempted termination, if this was a breach, did not end the contract or the obligation of the Western Company to sell syrup to the plaintiff. Due to the continuing character of the obligation, we think it can be said that there was an inducement of the breach by the Wisconsin Company. Furthermore, the Western Company, up to the time of the contract with the Wisconsin Company, had not violated its negative covenant. It had not attempted to sell syrup to any one else in plaintiff's territory. As to this portion of the contract, we think there can be no doubt that the Wisconsin Company induced a breach, possibly the only type of breach with reference to which plaintiff could have equitable relief.

On the former appeal of this case (194 Wis. 311, 216 N. W. 833), this court, speaking through Mr. Justice ESCHWEILER, said:

"If the appearing defendants in any way aided or participated with the Western Company in an unlawful breach of the contract of January, 1917, or, knowing of the existence of such contract and of a good-faith claim by plaintiff that it still had rights thereunder, thereafter maliciously aided the Western Company in any continued unlawful violation of the plaintiff's rights, they were each and all parties to a tort or wrong against the plaintiff for which each, all, or any may be held responsible for the direct and consequent damages."

The law applicable to the situation having thus been set out, it now becomes necessary to apply it to the facts of this case. Was there a right on the part of the Western Company to terminate the contract with the plaintiff? On this point we are of the opinion that there was no such right.

Paragraph sixth of the contract between the parties provides:

"Failure of party of the second part to properly and vigorously push the sale of bottled Coca Cola and use the minimum hereinafter named shall be deemed a violation of this contract, and party of the first part shall have the option to terminate same, by written notice, addressed to the last known place of business of party of the second part. For the purpose of determining that the party of the second part is properly pushing Coca Cola, party of the second part shall be required to bottle and sell at least 2,000 gallons of Coca Cola bottlers' syrup per year."

As appears from the foregoing statement of facts, the plaintiff, during the entire history of the contracts, never used 2,000 gallons per year. However, no objection was ever made by the Western Company until November, 1919. In 1917, after seven years under the old contract, during which the plaintiff at no time used the required gallonage, a new contract was entered into. Thereafter, during 1917 and 1918, as appears from the correspondence heretofore summarized, there were active efforts on the part of the Western Company to induce all its bottlers to curtail the sale of Coca Cola syrup because of the sugar shortage, and there is nothing in the record to indicate that there had ever been any countermand of the request to curtail. That the same conditions which induced the request to curtail continued through 1919 is evidenced by the fact that on December 9, 1919, the Western Company insisted that plaintiff agree temporarily to pay a higher price per gallon due to the greatly increased price of sugar. This agreement was said to be the result of the "emergency" created by the high cost (and presumably shortage) of sugar, and to be necessary in order to keep the bottlers "running." Under these circumstances we think it is clear that the Western Company was in no position, in December, 1919, to insist

upon a termination for failure properly to push the sale of Coca Cola. The time had long since passed when it could take advantage of defaults prior to 1917, and further than this a new contract had been entered into at the beginning of that year and the defaults were not failures to perform that contract. Since 1917 it is evident that plaintiff's failures are the result of the Western Company's request not to push sales.

The next contention of the respondents is that the evidence sustains the finding by the trial court of laches on the part of plaintiff. This is predicated upon the fact that the plaintiff took no affirmative action to compel specific performance or assert its rights in the territory during the three years following January 1, 1920. However, the Western Company was a foreign corporation, not licensed to do business in this state, and plaintiff would be required to go to a foreign jurisdiction to bring its action. Further than this, there was and is serious question as to whether plaintiff's contract, in so far as its affirmative covenants are concerned, is subject to specific performance. Until the Wisconsin Company entered into its contract in March, 1923, no one other than the Western Company asserted any rights contrary to plaintiff's, or attempted to interfere with its territory. Consequently there was no occasion to invoke the remedy of injunction. The Milwaukee Company, sub-bottler under the Wisconsin Company and a subsidiary of it, started bottling and selling Coca Cola about May 1, 1923. On May 14, 1923, notice was served by the plaintiff on the Milwaukee Company, and on June 9, 1923, this action was commenced. It further appears that the officials of the Wisconsin and Milwaukee companies were perfectly cognizant of the claims of the plaintiff and that they had not been abandoned, and that the contract was entered into only after legal advice was received to the effect that the plaintiff's contract was of no further force and effect. We think

the defense of laches cannot be sustained. There has been no such change in the circumstances of the parties as would bring the case within the rule of *Combs v. Scott,* 76 **Wis.** 662, 45 N. W. 532, and *Rogers v. Van Nortwick,* 87 Wis. 414, 58 N. W. 757.

Respondents further contend that the plaintiff, during the year 1922, violated the contract in paragraph fourth (a), "not to manufacture, deal in, sell, offer for· sale, use or handle, nor attempt to do so, either directly or indirectly, any product that is a substitute for or an imitation of Coca Cola, nor any product that can be used unfairly with Coca Cola."

The court found, and the evidence sustains the finding, that in 1922 the plaintiff did offer for sale some 200 cases of a beverage known as "Husting's Cola," which was a substitute for or an imitation of Coca Cola. If this act had occurred before the attempted termination by the Western Company, the Western Company would plainly have been entitled to rescind under the paragraph above quoted. The contention of the respondents that this violation by the plaintiff is sufficient to warrant the denial of equitable relief, is apparently based on two distinct and separate grounds: The first is that the attempted termination by the Western Company constituted an offer to rescind, ·and gave to the plaintiff the opportunity to accept and terminate the contract, and that since an innocent motive ought to be attributed to the plaintiff rather than a design to violate the contract, the act of manufacturing a substitute must be taken to have been intended by the plaintiff as an acceptance of the offered rescission.

The other contention of the respondents is tersely set out in 5 Pomeroy, Eq. Jur. (2d ed.) p. 4975, as follows:·"The plaintiff's wilful breach of an essential covenant may also be a defense, on the ground that his hands are not clean," citing *Lamare v. Dixon,* L. R. 6 H. L. 414; *Keener v. Mos-*

*lander,* 171 Ala. 533, 54 South. 881; *Barth v. Pittsburg, C., C. & St. L. R. Co.* (Ind. App.) 90 N. E. 488; *Datz v. Phillips,* 137 Pa. St. 203, 20 Atl. 426, 21 Am. St. Rep. 864; *Grubb Bros. v. Moore, Clemens & Co.* 108 Va. 72, 60 S. E. 757.

On the other hand, the plaintiff contends that the only purpose of the agreement was to prevent unfair competition with Coca Cola, and that since the breach by the Western Company had rendered such competition impossible, it cannot now treat as a breach acts of the plaintiff done for the purpose of minimizing damages.

Dealing first with the contention of the plaintiff, we are of the opinion that its claim that the manufacture of the substitute was a proper means of mitigating damages is unsound. Upon the renunciation of the contract by the Western Company, plaintiff would no doubt not only be excused from continuing, but would be obligated to discontinue any operations which would unnecessarily pile up damages. The plaintiff, upon an action for damages by it against the Western Company, could effectively defeat a counter-claim based on such failure to continue by setting up the first breach as an excuse for non-performance. However, no such situation exists here. It cannot be urged that this violation was a proper method or measure taken for the purpose of, or resulting in, mitigation of damages. The profits of such an operation clearly would not go in mitigation of damages. If plaintiff had increased the production and sale of soda-water for the purpose of making up for the profits lost by the breach, we think it would not be contended that the Western Company would be entitled to a reduction of damages to the extent that profits were increased by such operation, nor would the Western Company be entitled to a reduction of damages to the extent of profits resulting from the sale of the substitute.

There is authority for the proposition that renunciation by one of the parties excuses the other party from offering

to perform as a condition to obtaining specific performance, on the ground that equity will not require the doing of a useless act. 6 Page, Contracts, § 3305; *Cheney v. Libby,* 134 U. S. 68, 10 Sup. Ct. 498, 33 Lawy. Ed. 818; *Veeder v. McMurray,* 70 Iowa, 118, 29 N. W. 818; *Arnett v. Westcott,* 107 Kan. 693, 193 Pac. 377; *Tobin v. Larkin,* 183 Mass. 389, 67 N. E. 340; *Cape Girardeau-Jackson I. R. Co. v. Light & D. Co.* 277 Mo. 579, 210 S. W. 361; *Starr v. Crenshaw,* 279 Mo. 344, 213 S. W. 811; *McCormick v. Hickey,* 56 N. J. Eq. 848, 42 Atl. 1019. These cases, however, merely excuse plaintiff from tendering a performance which the act of renunciation indicates will not be accepted, and are not applicable to this situation.

Turning to the contention of the respondents that the wrongful termination gave to plaintiff an election to rescind, which it has exercised, we have concluded that this contention is without merit. It is stated in 3 Williston, Contracts, p. 2589:

"The right of rescission and restitution generally exists as an alternative remedy where there has been repudiation or a material breach of a contract, and is most commonly exercised when the aggrieved party has performed fully or in part, and wishes to recover what he has given or its value."

While the right to rescind upon repudiation or a material breach probably exists even though the party has not performed, "such a person will not wish ordinarily to avoid the contract altogether, because that course would deprive him of any right of action whatever. He could seek neither restitution, because he had given nothing, nor compensation in damages for breach of the contract, because he had put an end to the promise on which he must sue." 3 Williston, Contracts, p. 2609. Since the remedy of rescission is ordinarily exercised by one who has sufficiently executed the contract to be entitled to restitution, it is not lightly to be inferred that a party to a contract, situated as was the plaint-

iff, could have intended to terminate the contract. The conclusion that plaintiff intended by this act to rescind is certainly entitled to no greater weight than the rest of its conduct subsequent to the attempted termination, and this is clearly and unequivocally contrary to any such conclusion. While the breach was qualitatively important, it was relatively trivial both as to quantity of goods involved and the period of time that it covered. It was evidently an ill-advised attempt to somewhat repair the results of the Western Company's refusal to sell syrup, and we can find in it no ground for the conclusion that it was intended as an acceptance of the repudiation by the Western Company. The claim that plaintiff, by reason of this violation, does not come into a court of equity with clean hands, does not impress us as sound. It is clear under the authorities that the Western Company could not have taken advantage of the breach by plaintiff to rescind the contract. As stated in 3 Williston, Contracts, p. 2615: "A party who has himself been guilty of a substantial breach of contract cannot rescind the contract because of subsequent refusal or failure to perform by the other party," citing among other cases *Higgins v. Eagleton,* 155 N. Y. 466, 50 N. E. 287; *Getty v. Peters,* 82 Mich. 661, 46 N. W. 1036, 10 L. R. A. 465.

The cases which establish the principle contended for by the respondents all indicate that the breach of an essential covenant by the person seeking specific performance is a factor which may operate to render unconscionable and inequitable the granting of any relief to the plaintiff. In *Cox v. Cox,* 26 Grat. (67 Va.) 305, it is stated: "When the party seeking performance is himself in default, whether he can have it or not depends in a great measure upon how far the default goes to the essence of the contract."

We have concluded that the violation of the plaintiff, both in quantity and duration of time, was too inconsequential to render the granting of equitable relief improper, especially in view of the fact that it was a mere gesture of desperation

induced by the wrongful repudiation of the contract by the Western Company, and that it resulted in no damage to the Western Company or in any way rendered the future performance of the contract impossible, impracticable, or inequitable.

The foregoing conclusions compel an affirmance of the judgment in so far as it dismisses the complaint against the Coca Cola Company, and a reversal in so far as it denies plaintiff the relief sought against the defendants Wisconsin Coca Cola Bottling Company and Milwaukee Coca Cola Bottling Company.

*By the Court.*—Judgment reversed as to the defendants Wisconsin Coca Cola Bottling Company and Milwaukee Coca Cola Bottling Company, and cause remanded with directions to enter judgment in favor of the plaintiff, in accordance with the demand of the complaint. Judgment affirmed as to the defendant Coca Cola Company.

FAIRCHILD, J., took no part.

The following opinion was filed October 29, 1931:

WICKHEM, J. (*on motion for rehearing*). Upon the motion for rehearing, the defendants Milwaukee Coca Cola Bottling Company and Wisconsin Coca Cola Bottling Company contend that to enforce the decision of this court as rendered and filed herein on the 12th day of June, 1931, would deprive them and each of them of property without due process of law and would deny to them and each of them the equal protection of the laws contrary to and in violation of sec. 1 of art. XIV of the amendments to the constitution of the United States.

The court has considered this contention, and deems it to be without merit.

*By the Court.*—Motion for rehearing denied, with $25 costs.